UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| THE RAGAN FAMILY TRUST | CIVIL ACTION 12-0526 |
| VERSUS | U.S. DISTRICT JUDGE DEE DRELL |
| THE KANSAS CITY SOUTHERN RAILWAY COMPANY | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's motion to remand, **Doc. 8**, referred to me by the district judge for report and recommendation.

Plaintiff (Ragan or trust) sues the defendant (KCS or railroad) for injunctive relief and declaratory judgment, as well as damages. The railroad track runs on trust property pursuant to rights granted it in 1898. Whether the railroad's rights are pursuant to ownership of the land or merely a servitude is in dispute. Plaintiff claims that the railroad has threatened to build two spurs on its land adjacent to the tracks in order to serve a paper mill. Prior to suit being filed the parties negotiated the possible grant of an additional servitude adjacent to the existing one, in order for the railroad to provide for adequate clearance and drainage. When agreement could not be reached, KCS re-engineered the spurs so that they would be constructed entirely on the existing right of way and KCS rescinded its offer to Ragan to pay for an additional servitude. Thereafter, on February 2, 2012, Ragan filed this suit in state court contesting whether KCS has the legal right to build the spurs on the existing right of way..

1

The parties agree that federal question jurisdiction does not exist and that the parties are diverse. The jurisdictional dispute concerns the amount in dispute. Plaintiff argues that this suit is merely one for injunctive and declaratory relief to determine KCS's rights under the old servitude and to prevent it from entering upon plaintiff's property. KCS counters that plaintiff's complaint seeks damages in the event of a trespass and suggests that, indeed, KCS has begun construction of the spur on its existing right of way. Plaintiff contends that KCS has failed in its burden to prove that the amount in dispute exceeds $75,000, the jurisdictional amount in this court.

Applicable law

It is well settled that the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists.  However, the Fifth Circuit has applied different standards of proof, depending upon whether the complaint prays for a specific amount of damages.  <u>Allen v R & H Oil and Gas Co.</u>, 63 F.3d 1326 (5th Cir. 1995).  Where the complaint alleges entitlement to damages which exceed the jurisdictional limits of the court, now $75,000, the court may refuse jurisdiction only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount.  <u>St. Paul Mercury Indemnity Co. v. Red Cab. Co.</u>, 58 S. Ct. 586 (1938).  Where a specific amount of damages is not set forth, the legal certainty test is not applicable.  Instead, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.  <u>De Aguilar v. Boeing Co.</u>, 11 F.3d 55 (5th Cir. 1993) (DeAguilar I).

In Louisiana, plaintiffs are prohibited by state law from specifying the amount of damages sought, except in certain circumstances. La. Code Civ. P., Art. 893.  Therefore, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds

$75,000. De Aguilar I, supra.  The defendant may make this showing in either of two ways: (1) by demonstrating that it is facially apparent from the complaint that the claims are likely above $75,000, or (2) by setting forth the facts in controversy--preferably in the removal petition, but sometimes by affidavit--that support a finding of the requisite amount.  Allen, 63 F.3d at 1335. See Luckett v. Delta Airlines, Inc. 171 F.3d 295 (5th Cir. 1999). Plaintiff may, however, cite to a state statute, for example, that prohibits recovery of more than the amount sought.  De Aguilar v. Boeing Co., 47 F.3d 1404 (5th Cir. 1995) (De Aguilar II). Otherwise, a litigant who wants to prevent removal must file a binding stipulation or affidavit with her petition. Id.

      Removal may not be based upon conclusory allegations and the jurisdictional facts that support removal must be judged at the time of removal.

      Once jurisdiction is established, subsequent events that reduce the amount in controversy to less than $75,000 generally do not divest the court of diversity jurisdiction. St. Paul Mercury, supra.  While post removal affidavits may be considered in determining the amount in controversy at the time of removal, such affidavits or stipulations and amendments may be considered only if the basis for jurisdiction is ambiguous, that is, not facially apparent, at the time of removal.  Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880 (5th Cir. 2000); Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia (ANPAC) v. Dow Quimica de Columbia S. A., 988 F.2d 559, 565 (5th Cir. 1993), cert. den., 114 S. Ct. 685 (1994); St. Paul Mercury, supra.  See also, (De Aguilar II). Any post petition affidavits or stipulations are allowable only if relevant to the time of removal.  Allen, 63 F.3d at 1335.

      As Magistrate Judge Wilson stated in Carrier v. Veolia, 2007 WL 2350258 (W. D. La. 2007), no amounts which may be asserted in valid defense of all or part of a claim may be used

to reduce the amount in controversy in order to defeat diversity jurisdiction. The issue is not how much plaintiff's case may really be worth when all is said and done but, rather, what is the amount placed in dispute by the plaintiff.

Demands for equitable relief are assessed, for jurisdictional purposes, by "the value of the right to be protected or the extent of the injury to be prevented." Hartford v. Lou-Con, Inc., 293 F.3d 908 (5th Cir. 2002), that is, by the value of the object of the litigation Hunt v. Washington State Apple, 97 S. Ct. 2434 (1977); Garcia v. Koch Oil, 351 F.3d 636 (5th Cir. 2003). Further, the amount in controversy is determined from the perspective of the plaintiff, and the proper measure is the benefit to the plaintiff, not the cost to the defendant." Garcia, supra, at 640, fn 4.

Analysis

Plaintiff's petition asks for a permanent injunction and for a declaratory judgment. In addition, the state court petition asserts that KCS had begun constructing the spurs before suit was filed. It therefore asks that the property be ordered restored to its prior condition and that all damages caused by the trespass be paid.

The damages alleged in this case are not sufficient to make jurisdiction "facially apparent", that is, apparent from the allegations contained in the petition. See Simon v. Wal-Mart Stores, Inc., 193 F.3d 848 (5th Cir. 1999). Compare Luckett supra, and Gebbia, supra. Therefore, defendant must show by a preponderance of other evidence that the amount in dispute is more than $75,000.

In an action in equity as this one primarily is, ascertaining actual damages presents some difficulty. The value to the plaintiff of the rights he is seeking to protect is the measure of jurisdiction in equity cases, even though the value of that right may not be capable of exact

4

valuation in money.  Premier Industrial Corp. V. Texas Industrial Fastener Co., 450 F.2d 444 (5th Cir. 1971). See also: Hunt v. Washington State Apple Adv. C., 97 S.Ct.2434 (1977); Garcia v. Koch Oil Company of Texas, Inc., 351 F.3d 636 (5th Cir. 2003). Costs or damages which are collateral to the true object of the litigation, however, should not be included in the computation of the amount in dispute. Garcia, supra.

In this case, the true object of the litigation is a declaratory judgment determining KCS's rights and a  mandatory injunction prohibiting the trespass and, if necessary,  ordering the defendant to promptly restore the land. The value of the claim, viewed from plaintiffs' perspective, is the value of having its property rights determined once and for all and the value of protecting is property rights from trespassers–a very nebulous and difficult thing on which to place a value.

KCS asserts that the value of the claim is easily determined by looking at the negotiations which took place before the purchase of the second servitude was abandoned and suit was filed.[1] It points out that Ragan had suggested KCS pay for a $50,000 road to be built to cross the new spurs, $25,000 for the new servitude and $91,000 for the diminution in value of the Ragan property due to it being burdened by the additional right of way for the two new spurs. KCS thus computes the value of the plaintiff's claim at "at least" $166,000.

However, Ragan persuasively argues  that those amounts were applicable only if it sold KCS the rights to do what it wanted to do on the Ragan property. It points out that if it is

---

[1]  KCS correctly suggests that settlement demands may be used as "other paper" in order to determine the amount in dispute. Plaintiff points out that the negotiations were not "settlement demands". Nevertheless, to the extent relevant, the negotiations reduced to writing may be used as other paper and the semantics of the nature of the negotiations is immaterial.

successful in its bid in this case to prevent KCS from remaining on its property and trespassing, the "spur won't be there" and there will, therefore, be no need for a crossing, no servitude sold and no diminution in the value of the property. Further, those figures dealt with negotiation for an additional servitude which is not what we are dealing with here. Instead, we are dealing with the railroad's building on its existing right of way, the only issues being whether KCS has the legal right to do that–either because it owns the property on which it is building or because its 1898 servitude granted it the right to place the spurs alongside the main tracks. Defendant has presented no evidence as t the value of the dimunition of the property, if any, by placing additional tracks on the existing right of way.

While removal of whatever construction has commenced would certainly cost money, and perhaps a lot, KCS has presented no evidence as to that likely cost.[2] In any event, the value of this case must be, as discussed above, computed from the perspective of the plaintiff, not the cost to the defendant . The cost to KCS to remediate its trespass in the event plaintiff wins is irrelevant to the value to plaintiff not to have KCS exceed the scope of its legal rights on the right of way on the Ragan property. In that regard, KCS has presented no evidence as to the value from plaintiff's perspective.[3] Further, it is not obvious that there would be any damages owed even if construction is removed, for the construction is of the re-engineered spurs located, according to KCS's affidavit of Mr. Harder, entirely on the servitude over which KCS already had rights. In

---

[2] KCS's only submission in this regard is the unsupported and conclusory statement of Mr. Peek, by affidavit, that if KCS is required to remove its construction, "the cost of removal and the lost labor and material costs incurred  so far will be well in excess of $75,000."

[3] In brief, KCS notes only that "it is also possible that damages alone could justify this Court's exercise of jurisdiction." (Emphasis added)

other words, even if it were to be determined that KCS exceeded the scope of its 1898 servitude by building additional tracks (spurs) on that servitude, the damages, which are confined to the servitude, would likely have a minimal impact on the plaintiff's land.

The bottom line is that defendant, KCS, has failed to prove by a preponderance of the evidence that the amount in dispute in this suit exceeds the jurisdictional limits of this court.

For these reasons, IT IS RECOMMENDED that the motion to remand, doc. #8, be GRANTED and that this case be remanded to the 10th Judicial District Court, Parish of Natchitoches.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed.  Providing a courtesy copy of the objection tot he magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 1st day of June, 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE